IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) SHEILA BUCK, </br></br> Plaintiff, </br></br> v. </br></br> (1) C.J. RHOADES, </br> (2) M.C. PARKER, </br> (3) CITY OF TULSA, OKLAHOMA </br> (4) SECRET SERVICE AGENT #1, </br> in his Individual Capacity, </br> (5) SECRET SERVICE AGENT #2, </br> in his Individual Capacity </br> (6) ANTHONY ORNATO, </br> (7) BRAD PARSCALE, </br> (8) DONALD J. TRUMP FOR PRESIDENT, INC., </br> (9) COLORADO SECURITY AGENCY, INC., </br></br> Defendants. | Case No. 4:21-cv-00295-CVE-SH </br></br> Jury Trial Demanded </br></br> Attorney Lien Claimed |

## AMENDED COMPLAINT

**COMES NOW,** the Plaintiff, Sheila Buck, and for her causes of action against the above-named Defendants, alleges and states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Sheila Buck (hereinafter "Plaintiff"), is a resident of Tulsa County, Oklahoma.

2. Defendant Officer C.J. Rhoades (hereinafter "Defendant Rhoades"), was, at all times relevant hereto, an officer of the City of Tulsa Police Department and acting in such capacity as the agent, servant, and employee of the City of Tulsa Police Department. Defendant Rhoades is sued in his individual capacity.

1

3.      Defendant Officer M.C. Parker (hereinafter "Defendant Parker"), was, at all times relevant hereto, an officer of the City of Tulsa Police Department and acting in such capacity as the agent, servant, and employee of the City of Tulsa Police Department. Defendant Parker is sued in his individual capacity.

4.      Defendant City of Tulsa, Oklahoma ("City" or "Defendant City of Tulsa") is a municipality located in Tulsa County, Oklahoma. The City provides and employs the Tulsa Police Department.

5.      Defendant Secret Service Agent #1 (hereinafter "Agent #1"), was, at all times relevant hereto, an agent of the United States Secret Service and acting in such capacity as the agent, servant, and employee of the United States Secret Service. Defendant Agent #1's identity is unknown at this time and is sued in their individual capacity.

6.      Defendant Secret Service Agent #2 (hereinafter "Agent #2"), was, at all times relevant hereto, an agent of the United States Secret Service and acting in such capacity as the agent, servant, and employee of the United States Secret Service. Defendant Agent #2's identity is unknown at this time and is sued in their individual capacity.

7.      Defendant Anthony Ornato (hereinafter "Defendant Ornato"), was, at all times relevant hereto, an employee of the United States Government and acting in such capacity as the agent, servant, and employee of the United States Government. Defendant Ornato is sued in his individual capacity.

8.      Defendant Brad Parscale (hereinafter "Defendant Parscale"), was, at all times relevant hereto, an employee of Donald J. Trump For President, Inc., and acting in such capacity as the agent, servant, and employee of Donald J. Trump For President, Inc. Defendant Parscale is sued in his individual capacity.

9. Defendant Donald J. Trump for President, Inc. (hereinafter "Defendant Trump Campaign" or the "Trump Campaign") is a Principal Campaign Committee registered with the Federal Election Commission. The Trump Campaign is the organization responsible for the activities of Defendants Parscale and Ornato, and thus vicariously liable for the directives issued to Defendants Parker, Rhoades, Agent #1, and Agent #2.

10. Defendant Colorado Security Agency, Inc. ("Colorado Security") is a domestic for-profit business corporation, headquartered in Washington, D.C.

11. The acts and omissions that are the subject of this action occurred in the City of Tulsa, Tulsa County, which is located within the Northern District of Oklahoma.

12. This court has jurisdiction over this action because this controversy involves a federal question, specifically the violation of Plaintiff's rights as guaranteed by the United States Constitution, including her Fourth and Fourteenth Amendment right to be free from unreasonable searches and seizures, her First Amendment right to free speech, and for violations of the provisions of the Civil Rights Act, 42. U.S.C. § 1983. The Defendants participated in the denial of rights of Plaintiff as secured to her by the United States Constitution and/or the laws of the United States, and at the time of the violations, the defendants were acting under the color of statute, ordinance, regulation, custom, or usage of the State of Oklahoma. Thus, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

13. This Court has venue over this matter because the Defendants reside/or operate in the Northern District of the State of Oklahoma and the events giving rise to this cause of action occurred in the Northern District of Oklahoma. Thus, venue is proper under 28 U.S.C. § 1391.

14. This Court has venue over this matter pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), and 42 U.S.C. § 1983.

15. This court has supplemental jurisdiction over the state constitutional claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

## STATEMENT OF FACTS

16. Paragraphs 1-15 are incorporated herein by reference.

17. On June 20, 2020, at approximately 11:30 a.m., Plaintiff Buck displayed her ticket to Secret Service security staff at the Great American Comeback Celebration, hosted by the Trump Campaign, in Tulsa, Oklahoma.

18. The Great American Comeback Celebration was a campaign/political rally for the re-election of then-President Trump. There was no governmental purpose to this event.

19. After receiving a screening for prohibited items, security personnel allowed Plaintiff Buck into a cordoned-off area that surrounded the BOK Center and included Denver Avenue, among other downtown thoroughfares.

20. Plaintiff was dressed in a shirt that read "I can't breathe" and donned a black scarf that covered her head. She did not have any other belongings on her person.

21. On the event ticket provided to Plaintiff, the following items were listed as prohibited: "aerosols, alcoholic beverages, backpacks, bags, roller bags, suitcases, bags exceeding size restrictions (12"x14"x5"), balloons, balls, banners, signs, placards, chairs, coolers, drones and other unmanned aircraft systems, explosives of any kind (including fireworks), glass, thermal and metal containers, laser lights and laser pointers, mace and/or pepper spray, noisemakers, such as air horns, whistles, drums, bullhorns, etc., packages, poles, sticks and selfie sticks, spray containers, structures, supports for signs/placards, tripods, umbrellas, appliances (i.e. toasters), and any other items that may pose a threat to the security of the event as determined by and at the discretion of the security screeners." Plaintiff did not have any of the prohibited items on her person.

22. After Plaintiff was allowed into the event, without incident, she entered the cordoned-off area on the public City-owned area of Denver Avenue.

23. Upon information and belief, it was at this time that a member of the Trump Campaign staff, at the direction of Defendant Parscale, instructed Defendant Colorado Security, TPD and the Secret Service to remove Plaintiff Buck from the premises.

24. Upon information and belief, Defendant Ornato, acting as a White House deputy chief of staff and in his capacity as a former Secret Service agent, supervised and directed the removal and subsequent arrest of Plaintiff Buck.

25. Plaintiff was then approached by Defendants Rhoades, Parker, Agent #1, Agent #2, and an employee of Defendant Colorado Security. They informed her that she was not allowed inside the cordoned off premises, but did not state any specific reason why she was being asked to leave. At this time Plaintiff displayed to Defendants her ticket to the event, explaining that she should be allowed to stay. Ms. Buck then knelt down to pray.

26. One of Defendants Rhoades, Parker, Agent #1, Agent #2, or the Colorado Security employee then told Plaintiff that the blocks around the city-owned area are "like a private home, and if you've been asked to leave, you have to leave."

27. After insisting that she should be allowed to stay given she had done nothing wrong, had a ticket to the event, was allowed in without incident, and that she was in a public area, Plaintiff was arrested without probable cause or warrant.

28. While she was being apprehended by Defendants Rhoades and Parker, Plaintiff was told "[she] was trespassing and breaking the law," even though she had a ticket to the event.

29. Plaintiff Buck was taken to Tulsa County Jail and booked, not for trespassing, but rather for obstructing a police officer.

30. After her arrest, Plaintiff Buck spent hours in the Jail's booking area and suffered bruises and lacerations on her arms as a result of her handling by Tulsa Police.

31. In a statement issued after the arrest, Tulsa Police Capt. Richard Meulenberg said Trump Campaign staff directed police to arrest Buck because the event permit included the city streets surrounding the area.

32. Capt. Meulenberg further stated, "Not unlike any other private company, [the Trump campaign] reserved this area…[t]he campaign being the event holders, so to speak, they requested that she leave. She refused to do so. Then they called over the officers, and the officers spoke with her for several minutes trying to get her to leave on her own accord."

33. Capt. Meulenberg admitted he had not seen contract language that allowed the Campaign to direct police to arrest citizens but added, "**They basically have that area, and they can pick and choose whom they want**."

34. Another statement issued on Facebook by the Tulsa Police Department said, "For clarification, [Plaintiff] had passed through the metal detector area to the most secure area of the event accessible only to ticket holders. Whether she had a ticket or not for the event is not a contributing factor for the Tulsa Police in making the arrest. Officers at the location, particularly in the 'Sterile' area, will remove individuals **only at the direction of Campaign Staff**."

35. The Trump Presidential campaign contracted with ASM Global to secure use of the BOK Center for its campaign event on Saturday June 20th, 2020.

36. On June 17th, 2020, Tulsa Mayor G.T. Bynum's office publicly stated "[Mayor Bynum] did not sign a contract, an agreement **or issue a City permit as this was coordinated through the event organizer and venue management firm**." (Emphasis added).

37. The City of Tulsa mandates that any permit encompassing a city street be submitted for application no later than **45 days before** the event.

38. The Trump Campaign did not apply for or legally acquire the necessary City permit to block off public street access and acquire private treatment of the area around the BOK Center before the June 20th, 2020 event, including the Denver Avenue location where Plaintiff Buck was apprehended.

39. This event did not fall under any exclusions to the permit requirement.

40. On June 19, 2020, then-President Donald Trump issued a public statement threatening any would-be attendees at the Tulsa rally who disagreed with his political message, declaring "Any protesters, anarchists, agitators, looters or lowlifes who are going to Oklahoma please understand, you will not be treated like you have been in New York, Seattle, or Minneapolis. It will be a much different scene!"

41. Upon information and belief, Defendants Parscale and Ornato demanded that Plaintiff be removed from the cordoned off premises due to her shirt that read "I can't breathe" and other clothing that was the color black. Defendants disagreed with the political implications of Plaintiff's dress and assumed that she was in attendance to somehow protest or agitate the President and/or his allies.

42. Plaintiff wore the shirt in preparation for a later event and in no way was agitating anyone around her or the President. She was simply standing on a public street, which she passed through legally and in accordance with the event's stated policies. Through their actions and misplaced assumptions, Defendants Parscale and Ornato directly contributed to Plaintiff Buck's unlawful arrest and false imprisonment.

43. Defendants Rhoades, Parker, Agent #1, and Agent #2 followed the orders of Defendant Colorado Security and the Trump campaign staff, in clear violation of Plaintiff Buck's constitutional rights, by removing Plaintiff Buck from a public space for no reason other than the Trump campaign and/or Defendant Ornato's belief that she should not be allowed there.

44. Defendant City of Tulsa, as the employer of the Tulsa Police Department, was ultimately responsible not only for the security of the event, but the treatment of citizens by TPD officers throughout the public areas surrounding the event. Further, it was Defendant City of Tulsa's responsibility to understand the contract language of the Trump campaign with ASM Global and any permits the Trump Campaign may have acquired from the City prior to the event (which it did not obtain to acquire <u>private</u> access to Denver Avenue).

45. Upon information and belief, Defendant City, through TPD, approved of an unconstitutional arresting policy in accordance with the wishes of the Trump Campaign. The City is responsible for the approval of these unlawful orders, including the wrongful arrest and false imprisonment of Plaintiff Buck. Indeed, as stated, *supra*, by Capt. Meulenberg and the TPD Facebook account, TPD professedly approved of and operated under an absolute policy of removing and arresting individuals, without question or regard for constitutional rights, at the simple behest of the Trump Campaign.

46. Having legally obtained a ticket to the event and not violating any of the stated terms of attendance at the event, nor any other local, state, or federal ordinance while inside the cordoned off area, Plaintiff Buck's actions and clothes did not constitute any justifiable basis for removal from the public area, arrest, or imprisonment.

## CAUSES OF ACTION

### I.

**VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**
**(42 U.S.C. § 1983)**
**(Defendants Rhoades, Parker, Agent #1, and Agent #2)**

47. Paragraphs 1-46 are incorporated herein by reference.

48. Plaintiff Buck is entitled to the equal protection of laws and due process by state actors pursuant to her Constitutional rights as a United States citizen.

49. As described above, Defendants Rhoades, Parker, Agent #1, and Agent #2, knew — or it was obvious — that the directives of Defendants Parscale and Ornato would violate the rights and privileges of Plaintiff Buck.

50. Defendants Rhoades, Parker, Agent #1, and Agent #2 disregarded these known and obvious risks in deliberate indifference to Plaintiff Buck's rights.

51. It was obvious that Plaintiff Buck had a First Amendment constitutional right to exist and pray where she was arrested.

52. Under the circumstances, Defendants Rhoades, Parker, Agent #1, and Agent #2 had a duty and obligation to assure that Plaintiff Buck received proper treatment as a citizen with rights protected by the Constitution.

53. As a direct and proximate result of this deliberate indifference, as described above, Plaintiff Buck experienced unnecessary physical pain, severe emotional distress, mental anguish, a loss of quality and enjoyment of life, terror, degradation, oppression, humiliation, and embarrassment.

54. As direct and proximate result of Defendants' conduct, Plaintiff is entitled to pecuniary and compensatory damages. Plaintiff is entitled to damages due to the deprivation of Ms. Buck's rights secured by the U.S. Constitution, including punitive damages.

## II.

**WRONGFUL ARREST AND FALSE IMPRISONMENT IN VIOLATION OF THE FOURTH AND/OR FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**
**(42 U.S.C. § 1983)**
**(Defendants Rhoades, Parker, Agent #1, and Agent #2)**

55. Paragraphs 1-54 are incorporated herein by reference.

56. In determining the existence of probable cause, Courts are required to include exculpatory evidence that was omitted or suppressed by law enforcement.

57. When one considers the evidence that was omitted, ignored or suppressed by Defendants Rhoades, Parker, Agent #1, and Agent #2, there was plainly no probable cause for the arrest of Ms. Buck.

58. Defendants Rhoades, Parker, Agent #1, and Agent #2 had no reason — aside from the unlawful orders of Defendants Parscale and Ornato — to pursue Ms. Buck's removal from the public space. Initially telling Ms. Buck she was being apprehended for trespassing, and then later clarifying that her arrest was for obstruction, signifies the utter lack of reasoning and purpose as to her seizure, arrest, and imprisonment. In contrast to Defendants' conduct, Ms. Buck in no way violated any law or policy, and in fact acted in accordance with the campaign's stipulations, yet Defendants arrested and imprisoned her in the absence of probable cause.

59. This wrongful arrest and false imprisonment lacked probable cause, as required by the Fourth Amendment, as applied to the States by the Fourteenth Amendment. This wrongful arrest and false imprisonment violated Ms. Buck's Fourth Amendment right to be secure against unreasonable seizure, and violated Ms. Buck's Fourth Amendment-protected sense of security and individual dignity.

60. This wrongful arrest and false imprisonment was a proximate cause of Ms. Buck's physical injuries, emotional distress, pain and suffering, and the damages as alleged herein.

### III.

### FALSE IMPRISONMENT
**(Defendants Colorado Security, Parscale, Ornato, and the Trump Campaign)**

61. Paragraphs 1-60 are incorporated herein by reference.

62. As described *supra*, Defendants Colorado Security, Parscale, Ornato, and the Trump Campaign willfully and maliciously directed Defendants Parker, Rhoades, Agent #1, and Agent #2 to remove Ms. Buck from the city street, in violation of her constitutional rights.

63. Plaintiff is entitled to damages pursuant to *Walters v. J.C. Penney Co., Inc.* 82 P.3d 578, 2003 OK 100, (Okla. 2003) as her imprisonment was A) against her will; and B) unlawful due to the nature of her wrongful arrest and absence of probable cause.

64. Defendants Parscale, Ornato, and the Trump Campaign are liable for the wrongful arrest and subsequent false imprisonment of Plaintiff Buck because of their orders, upon information and belief, to remove her from a public space she had every right to occupy, through her constitutional protections and ticket to the event occurring in the public space.

65. These unconstitutional orders were the catalyst for Plaintiff Buck's physical injuries, emotional distress, pain and suffering, and the damages as alleged herein. She is therefore entitled to compensatory and punitive or exemplary damages from Defendants Parscale, Ornato, and the Trump Campaign.

## IV.

## BIVENS ACTION
## (42 U.S.C. § 1983)
## (Defendants Ornato, Secret Service Agents #1 and #2)

66. Paragraphs 1-65 are incorporated herein by reference.

67. Defendants Ornato, Agent #1, and Agent #2, as federal officials employed by the White House and Secret Service, respectively, acting under the color of statute, regulation, custom or law, by falsely requesting the removal of Plaintiff and her subsequent arrest, caused the Plaintiff to be subjected to the deprivation of her rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiff Buck is entitled to

relief from Defendants Ornato, Agent #1, and Agent #2 under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

68. Upon information and belief, Defendant Ornato was personally involved in the unlawful and unsubstantiated request to remove Plaintiff Buck from the cordoned-off area of Denver Avenue.

69. Defendants Agent #1 and Agent #2 personally participated in the unlawful arrest and false imprisonment of Plaintiff Buck in direct violation of her constitutional rights.

70. The acts and omissions described above by Defendants Ornato, Agent #1, and Agent #2 herein violated clearly established statutory and/or constitutional rights of which a reasonable person would have known.

71. As a result of the conduct of the Defendants as described above, Plaintiff has suffered damages in the form of physical and emotional pain and was deprived of her right to free expression as guaranteed to Plaintiff under the First Amendment to the United States Constitution, the right to be secure in her person against unreasonable seizures under the Fourth Amendment to the United States Constitution, and of her right to not be deprived of her property without due process of law in violation of the Fifth and Fourteenth Amendments.

72. Further, the conduct of the Defendant was willful, wanton, malicious, shocking to the conscience and intended to induce lawlessness, terrorize, cause harm, and injure the Plaintiff and therefore warrants the imposition of punitive or exemplary damages against Defendants Ornato, Agent #1, and Agent #2.

## V.

## VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
## (42 U.S.C. § 1983)
**(Defendants Rhoades, Parker, Agent #1, and Agent #2)**

73. Paragraphs 1-72 are incorporated herein by reference.

74. As described *supra*, Defendants Rhoades, Parker, Agent #1, and Agent #2, removed Plaintiff Buck from the public space she occupied due to her clothing, which they construed as a political message adversarial to the beliefs of the Trump Campaign.

75. The unconstitutional and damaging actions suffered by Plaintiff Buck and described herein were conceived in retaliation for Ms. Buck's First Amendment expressions.

76. There was simply no reason whatsoever to order Ms. Buck's removal from the premises other than what Defendants Parscale, Ornato, and the Trump Campaign believed to be her political expressions.

77. Plaintiff Buck's removal from a public space for no reason other than the message displayed on her t-shirt was not grounded in any scintilla of legitimate probable cause and was executed solely because of her First Amendment expressions.

78. This direct causal connection between Defendants' retaliatory animus and Plaintiff's physical injuries, emotional distress, pain and suffering, and the damages as alleged herein entitle her to seek pecuniary relief under the First Amendment.

## VI.

### FRAUDULENT MISREPRESENTATION
### (Defendants Parscale and the Trump Campaign)

79. Paragraphs 1-78 are incorporated herein by reference.

80. Defendants Parscale and the Trump Campaign produced an event ticket to the Plaintiff which did not list her clothing or action as prohibited, and caused the Plaintiff physical and emotional distress when she subsequently went to the event without the knowledge that she could be arrested for her dress or act of prayer.

13

81. As described previously, Defendants Parscale and the Trump Campaign supervised and/or specifically ordered the unlawful removal of Plaintiff from a public city avenue over which the Trump Campaign did not have jurisdiction.

82. Defendants Parscale and the Trump Campaign committed fraudulent misrepresentation pursuant to *Bowman v. Presley,* 212 P.3d 1210 (Okla. 2009) by misrepresenting and failing to list the necessary causes that would precipitate the authorization, direction, and/or supervision of a person's removal from the event. It is clear that Plaintiff's actions prior to her removal were completely legal, appropriate for the venue, posed no harm to anyone, including herself, and, most importantly, were well within the bounds of the ticket issued to her. The acts and omissions of Defendants Parscale and the Trump Campaign complained of herein include, but are not limited to, the following:

   a. providing an event ticket to Plaintiff Buck that listed prohibited items, none of which Plaintiff Buck had on her person when she was told to leave the premises. Therefore the shirt she wore containing the words "I can't breathe" was assumed to be permissible at the event because of Defendants Parscale and the Trump Campaign's misrepresentation;

   b. listing the prohibited items as a complete list meant to be exhaustive for the purposes of identifying, prior to attendance at the event, what a person could or could not bring. This list was made either under false pretenses as Defendants Parscale and the Trump Campaign knew these were not the only prohibited items, or they were made recklessly without knowledge of what would or would not be permitted at the event;

   c. providing the ticket to Plaintiff Buck with the assumption that it would be acted upon through her attendance at the event; and

d. the reliance on the event ticket by Plaintiff Buck which ultimately was to her detriment as she followed its guidelines, was allowed into the event with it in possession, and was ultimately removed from the event in an unlawful and unjustifiable manner.

83. The acts and omissions described above by Defendants Parscale and the Trump Campaign herein violated clearly established statutory and constitutional rights of which a reasonable person would have known.

84. As a result of the conduct of the Defendants as described above, Plaintiff Buck has suffered damages in the form of physical and emotional pain and was misled through fraudulent misrepresentation, ultimately leading to her false arrest and imprisonment.

85. Further, the conduct of the Defendants was willful, wanton, malicious, and intended to cause harm to the Plaintiff and therefore warrants the imposition of punitive or exemplary damages against Defendants Parscale and the Trump Campaign.

## VII.

### *PEMBAUR* CLAIM
### (42 U.S.C. § 1983)
### (CITY OF TULSA)

86. Paragraphs 1-85 are incorporated herein by reference.

87. Defendant City of Tulsa is the provider and employer of the Tulsa Police Department.

88. Upon information and belief, City/TPD officials, with final policymaking authority, approved of and subsequently cooperated in an unconditional policy of arresting and apprehending individuals based solely off the demands of the Trump Campaign and/or individuals affiliated with it. This policy and action was taken in this single occurrence by the City, and, therefore, Plaintiff Buck is entitled to relief from Defendant City of Tulsa under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

89. Upon information and belief, Defendant City of Tulsa, through TPD officials, with final policymaking authority, was personally involved in the unlawful and unsubstantiated request to remove Plaintiff Buck from the cordoned-off area of Denver Avenue.

90. The acts and omissions described above by Defendant City of Tulsa herein violated clearly established statutory and/or constitutional rights of which a reasonable person would have known.

91. As a result of the conduct of the Defendant as described above, Plaintiff has suffered damages in the form of physical and emotional pain and was deprived of her right to free expression as guaranteed to Plaintiff under the First Amendment to the United States Constitution, the right to be secure in her person against unreasonable seizures under the Fourth Amendment to the United States Constitution, and of her right to not be deprived of her property without due process of law in violation of the Fifth and Fourteenth Amendments.

92. Further, the conduct of the Defendant was willful, wanton, malicious, shocking to the conscience and intended to induce lawlessness, terrorize, cause harm, and injure the Plaintiff and therefore warrants the imposition of punitive or exemplary damages against Defendant City of Tulsa.

**WHERFORE**, based on the foregoing, Plaintiff prays that this Court grant her the relief sought including, but not limited to, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorneys' fees, and all other relief deemed appropriate by this Court.

Respectfully submitted,

**SMOLEN & ROYTMAN**

                Daniel E. Smolen, OBA #19943
                Robert M. Blakemore, OBA #18656
                701 S. Cincinnati Avenue
                Tulsa, Oklahoma 74119
                (918) 585-2667 P
                (918) 585-2669 F
                danielsmolen@ssrok.com
                bobblakemore@ssrok.com

                ***Attorneys for Plaintiff***