## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SHEILA BUCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-0295-CVE-SH** |
| | ) | |
| **C. J. RHOADES,** | ) | |
| **in his individual capacity, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are defendants C.J. Rhoades, M.C. Parker, and City of Tulsa's motion to dismiss (Dkt. # 8); plaintiff's response to C.J. Rhoades, M.C. Parker, and City of Tulsa's motion to dismiss (Dkt. # 32); defendants C.J. Rhoades, M.C. Parker, and City of Tulsa's reply (Dkt. # 42); defendants Donald J. Trump for President, Inc. and Brad Parscale's motion to dismiss (Dkt. # 29); plaintiff's response to Donald J. Trump for President, Inc. and Brad Parscale's motion to dismiss (Dkt. # 40); and defendants Donald J. Trump for President, Inc. and Brad Parscale's reply (Dkt. # 43). This case arises from plaintiff Sheila Buck's forced removal from a June 20, 2020 political campaign rally for then-President Donald J. Trump in Tulsa, Oklahoma, and her subsequent arrest by Tulsa Police Department (TPD). On June 1, 2021, plaintiff filed a petition in state court against eight defendants, including defendants Rhoades, Parker, City of Tulsa, Parscale, and Donald J. Trump for President, Inc. (Trump Campaign). Dkt. # 3-1, at 6. The case was properly removed to federal court. Dkt. # 3. On July 21, 2021, plaintiff filed an amended complaint naming an additional defendant. Dkt. # 1. On August 2, 2021, defendants Rhoades, Parker, and City of Tulsa moved,

pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss plaintiff's claims against them for failure to state a claim upon which relief may be granted.  Dkt. # 8.  Similarly, on August 23, 2021, defendants Parscale and Trump Campaign moved to dismiss under Rule 12(b)(6) for failure to state a claim. Dkt. # 29.

## I.

Defendant Trump Campaign contracted with venue management firm, ASM Global, to secure use of Tulsa, Oklahoma's BOK Center for a June 20, 2020 political campaign rally for the re-election of then-President Trump.  Dkt. # 1, at 4, 6.  "The City of Tulsa mandates that any permit encompassing a city street[, as here,] be submitted for application no later than 45 days before the event."  Id. at 6.  On June 17, 2020, Tulsa Mayor G. T. Bynum's office issued a public statement that Mayor Bynum "did not sign a contract, an agreement or issue a City permit" for this event.  Id.  In other words, defendant Trump Campaign did not apply for a city permit, which is generally required to block public street access around the BOK Center.  Id. at 7.

On June 20, 2020, plaintiff presented her event ticket to "Secret Service security staff" for the Trump Campaign's political rally and, after receiving a security screening, was allowed "into a cordoned-off area that surrounded the BOK Center and included Denver Avenue, among other downtown thoroughfares."  Id. at 4.  "Plaintiff was dressed in a shirt that read 'I can't breathe' and donned a black scarf that covered her head."  Id.  While plaintiff was standing on a public street (Denver Avenue), "a member of the Trump Campaign staff, at the direction of [Trump Campaign employee] [d]efendant Parscale, instructed [d]efendant Colorado Security, TPD, and the Secret Service to remove [p]laintiff Buck from the premises."  Id. at 5.  TPD officers (defendants Rhoades and Parker), two Secret Service agents, and a Colorado Security Agency, Inc. (Colorado Security)

2

employee approached plaintiff and "informed her that she was not allowed inside the cordoned off premises[.]" Id.  Plaintiff, who was screened for prohibited items and passed through the security screening without incident, displayed her event ticket and insisted that she should be allowed to stay. Id. at 4-5.  "Plaintiff then knelt down to pray."  Id. at 5.  Plaintiff was informed that "the blocks around the city-owned area are 'like a private home, and if you've been asked to leave, you have to leave.'"  Id.  She was apprehended by defendants TPD officers Rhoades and Parker, who told plaintiff she was "trespassing and breaking the law," arrested her, and took her to the David L. Moss Criminal Justice Center (Tulsa County Jail), where she was booked for "obstructing a police officer." Id.  Plaintiff "spent hours in the [Tulsa County] Jail's booking area and suffered bruises and lacerations on her arms as a result of her handling by Tulsa Police."  Id. at 6.  Plaintiff alleges that defendant Parscale directed TPD officers, Secret Service agents, and a Colorado Security employee to remove plaintiff from the cordoned-off portion of Denver Avenue "due to her shirt that read 'I can't breathe' and other clothing that was the color black."[1]  Id. at 7.

In a statement issued after plaintiff's arrest, TPD Captain Richard Meulenberg stated that "Trump Campaign staff directed police to arrest [plaintiff] because the event permit included the city streets surrounding the area"; however, Capt. Meulenberg "admitted he had not seen contract language that allowed the [Trump] Campaign to direct police to arrest citizens[.]"  Id. at 6.  TPD also issued a statement on Facebook, which stated, in pertinent part, plaintiff "had passed through the metal detector area to the most secure area of the event accessible only to ticket holders. . . . [TPD] [o]fficers at the location . . . will remove individuals only at the direction of [c]ampaign [s]taff."  Id.

---

[1]      The Court infers that the quote 'I can't breathe' and the color black are associated with the Black Lives Matter movement.

3

(emphasis added).  Plaintiff alleges that defendant City of Tulsa, through the TPD, "approved of an unconstitutional arresting policy in accordance with the wishes of the Trump Campaign . . . [that is,] TPD professedly approved of and operated under an absolute policy of removing and arresting individuals, without question or regard for constitutional rights, at the simple behest of the Trump Campaign."  Id. at 8.

On July 20, 2021, plaintiff filed an amended complaint in federal court alleging the following causes of action: civil rights violations under 42 U.S.C. § 1983 (counts 1, 2, 5, 7); civil rights violations under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (count 4); and state claims of false imprisonment (count 3) and fraudulent misrepresentation (count 6).  Dkt. # 1, at 8-16.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id.  (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 562.  Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact,

and must construe the allegations in the light most favorable to the claimant.  Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature.  Erikson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants Rhoades, Parker, City of Tulsa, Trump Campaign, and Parscale move to dismiss certain claims brought by plaintiff on the following grounds:

a.  *C.J. Rhoades, M.C. Parker, and City of Tulsa's Motion to Dismiss (Dkt. # 8)*

Plaintiff alleges § 1983 claims for constitutional rights violations against defendants TPD officers Rhoades and Parker in their individual capacity (counts 1, 2, 5).  Dkt. # 1, at 8-9, 12-13.  Additionally, plaintiff alleges a § 1983 claim against defendant City of Tulsa under Pembaur v. City of Cincinnati et al., 475 U.S. 469 (1986), for violations of her First, Fourth, Fourteenth, and Fifth Amendment rights (count 7).  Id. at 15-16.

Defendants Rhoades, Parker, and City of Tulsa move to dismiss because 1) plaintiff failed to state claims under § 1983 against defendants Rhoades and Parker for violating plaintiff's First, Fourteenth, and Fourth Amendment rights; 2) Defendants Rhoades and Parker are entitled to qualified immunity; 3) plaintiff failed to state a Pembaur claim against defendant City of Tulsa for violations of her First, Fourth, Fourteenth, and Fifth Amendment rights; 4) plaintiff failed to state a claim for punitive damages against defendants Rhoades, Parker, and City of Tulsa; and 5) "this

Court has no jurisdiction over [p]laintiff's state [claims]." Dkt. # 8, at 1-2. Specifically, defendants argue that plaintiff's claims fail because she was not removed from a public space; rather, pursuant to 18 U.S.C. § 1752, she was "removed from a cordoned-off area of federally restricted Presidential grounds." Id. at 3-4. Defendants further argue that "the Trump Campaign was not required to obtain a special event permit from the City of Tulsa. The Presidential Event was exempt." Id. at 4. Finally, defendants argue that the Secret Service was acting within the scope of its authority to "plan, coordinate, and implement security operations at presidential special events" and TPD was acting in cooperation with the Secret Service and Colorado Security "to protect the President of the United States." Id. at 5.

42 U.S.C. § 1983 provides a cause of action against any "person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States  . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Because it is axiomatic that the Constitution's protections apply only to governmental actors, "[t]he fundamental inquiry is whether [a defendant] is a governmental actor to whom the prohibitions of the Constitution apply." San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 (1987). Thus, to state a claim under § 1983, a plaintiff must allege two essential elements: 1) that a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Suiters, 499 F.3d 1228, 1232–33 (10th Cir. 2007).

As a preliminary matter, § 1983 creates a cause of action against any person acting under color of state law; thus, plaintiff's § 1983 claims do not apply to Secret Service employees, who are

6

agents of the <u>federal</u>, not state, government.  The Court finds that amendment would be futile, because no set of facts could plausibly establish that the Secret Service agents were acting under color of state law.  <u>Curley v. Perry</u>, 246 F.3d 1278, 1281-82 (10th Cir. 2001) ("dismissal under Rule 12(b)(6) without affording the plaintiff notice or an opportunity to amend is proper only when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile").  Therefore, plaintiff's § 1983 claims against defendants Secret Service Agent #1 and Secret Service Agent # 2 should be dismissed without leave to amend.

1.      Constitutional Violation

The first threshold inquiry for plaintiff's § 1983 claims is whether a right secured by the Constitution or laws of the United States was violated.  Plaintiff alleges violations of her First, Fourteenth, Fourth, and Fifth Amendment rights.  Dkt. # 1, at 8-16.

i.      First and Fourteenth Amendment Violation - Speech

"The First Amendment, applicable to the States under the Due Process Clause of the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble . . .'" <u>McCraw v. City of Oklahoma City</u>, 973 F.3d 1057, 1065 (10th Cir. 2020) (quoting U.S. CONST. amend. I).  To demonstrate a First Amendment violation, plaintiff "must first establish that [her] activities are protected by the First Amendment. If so, a court must identify whether the challenged restrictions affect a public or nonpublic forum; that determination dictates the extent to which the government can restrict First Amendment activities within the forum." <u>Id.</u> "Finally, courts must determine whether the proffered

justifications for prohibiting speech in the forum satisfy the requisite standard of review." Id. at 1066.

Under the First Amendment, protected expression includes written and spoken words, as well as symbolism. Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston, 515 U.S. 557, 569 (1995). Thus, plaintiff's shirt, emblazoned with the words "I can't breathe," and her black clothing, symbolic of the Black Lives Matter movement, fall within the First Amendment's scope of protected speech. Consequently, the Court must determine whether the cordoned-off portion of Denver Avenue--from which plaintiff was compulsorily removed by TPD officers--was a public forum at that time, which dictates the extent to which the government can restrict protected speech activities within that forum. The Tenth Circuit has found that public streets and sidewalks are "quintessential public fora." McCraw, 973 at 1067-68. However, in a similar case in the Sixth Circuit, the court found that, where a city granted a permit to a private organization for the exclusive use of a traditional public forum (a public park) for a presidential re-election campaign rally, the plaintiff's speech rights were not violated. Sistrunk v. City of Strongsville, 99 F.3d 194, 195-200 (6th Cir. 1996). There, the analysis turned largely on the city-issued permit, which temporarily changed the character of the traditionally public forum, and restricted its use to the organizers and their invitees, who, by virtue of their permit, could control expressive activity at their campaign rally. See id. at 199-200. Here, by contrast, plaintiff pleads sufficient plausible facts to establish that the Trump Campaign did not obtain a permit for the political campaign rally; therefore, the cordoned-off area of Denver Avenue was not temporarily transformed into a non-public forum for the event organizer's exclusive use.

Defendants Rhoades, Parker, and City of Tulsa argue that the Trump Campaign was exempt from the city permitting requirement because "[t]he Presidential Event was exempt." Dkt. # 8, at 4. Namely, defendants cite a Tulsa municipal ordinance that states, in pertinent part, "[i]t shall be unlawful for any person to engage in the conduct of a special event on public and/or private property, unless exempted, without first obtaining a permit from the City"; and "[t]he following activities are exempt from the special event permit requirement: . . . [a]ctivities conducted by governmental agency acting within the scope of its authority[.]" TULSA, OKLA., CODE OF ORDINANCES tit. 37, ch. 14, §§ 1402, 1403 (2018). However, the Trump Campaign is <u>not</u> a governmental agency, and the political rally was, by definition, <u>not</u> an official Presidential event.[2]

Defendants further argue that the cordoned-off area was temporarily a non-public forum because the Secret Service blocked it off to protect the President. Specifically, 18 U.S.C. § 3056 states, in pertinent part, "the United States Secret Service is authorized to protect . . . the President . . . [and] [w]hen directed by the President, the United States Secret Service is authorized to participate, under the direction of the Secretary of Homeland Security, in the planning, coordination, and implementation of security operations at special events of national significance[.]" 18 U.S.C. § 3056 (a)(1), (e)(1). Additionally, defendants argue that the cordoned-off area of Denver Avenue constituted "restricted grounds" within the meaning of 18 U.S.C. § 1752, which defines "restricted grounds" as "a building or grounds where the President or other person protected by the Secret

---

[2]     For example, the Congressional Research Service distinguishes between trips taken by a President for official functions, as opposed to political, unofficial functions. L. ELAINE HALCHIN, CONG. RESEARCH SERV., RS21835, PRESIDENTIAL TRAVEL: POLICY AND COSTS 1 (2012). In other words, a sitting President's political activities, such as a campaign rally, are not official government functions.

Service is or will be temporarily visiting[.]"  18 U.S.C. § 1752(c)(1)(B).  The Court finds several issues with these arguments.

The Court is highly skeptical that a political campaign rally is an event of national significance--a rally for one particular political candidate stands in stark contrast to widely-recognized events of national significance, such as Inauguration Day or events commemorating federal holidays such as Veterans Day, Independence Day, and so forth.  The Court finds support for the distinction between a political rally and an event of national significance in the text of the Hatch Act, which explicitly prohibits Secret Service employees from "tak[ing] an active part in . . . political campaigns[.]"  5 U.S.C. § 7323 (2)(A)-(B).  Crucially, there is a distinction in the text and structure of § 3056 between the Secret Service's authorization for its protective function for the President, which is enumerated in § 3056(a)(1), and the Secret Service's authorization for participating in security implementation at nationally significant events, which is enumerated in § 3056(e)(1).  The structure of § 3056 leads the Court to conclude that, just because the President is in attendance, does not make an event a special event of national significance for which the Secret Service has authority to implement security operations (beyond that of protecting the President's person).

Plaintiff alleges that Secret Service employees were checking tickets for the political campaign rally and, at the direction of a Trump Campaign employee (defendant Parscale), participated in removing plaintiff from the cordoned-off area of Denver Avenue.  Accordingly, plaintiff sufficiently pleads that the agents were acting at the direction of a private organization (the Trump Campaign), and not the Secretary of Homeland Security or the President.  Therefore, plaintiff has plausibly established, at the motion to dismiss stage, that the Secret Service agents were acting outside the scope of their authority.  Accordingly, it is plausible that the cordoned-off area was not

"restricted grounds" within the purpose and meaning of § 1752, and that portion of Denver Avenue remained a public forum during the incident giving rise to this case.  Moreover, plaintiff's removal from Denver Avenue was at the direction of the Trump Campaign, a private organization, which 1) did not have a permit that enabled it to control or abridge speech on a public city street; and 2) is not included in §§ 3056 and 1752's mandate and concomitant grant of authority for certain conduct, e.g., implementing security operations and designating or enforcing certain restricted grounds.

"It is well-settled that even in a public forum the government may impose reasonable restrictions on the time, place, and manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech[.]"  McCraw, 973 F.3d at 1070 (internal quotations omitted).  However, plaintiff has plausibly alleged that she was removed because of the content of her protected speech.  That is, government actors--acting at the direction of the Trump Campaign, a private organization that did not have authority to control or restrict protected speech-- removed plaintiff from a public forum because of her expressive attire.  Moreover, "[f]or the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."  Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).  Here, defendants argue that TPD was participating in "concerted efforts to protect the President of the United States."  Dkt. # 8, at 5. Notwithstanding, suppressing protected expression in a quintessential public forum merely because a president might oppose a speaker's viewpoint is not a necessary regulation that is narrowly drawn to serve the goal of protecting the President.  For example, defendant City of Tulsa could have required defendant Trump Campaign to obtain a city permit to block access to Denver Avenue.  Such city permit would have, for a limited period of time, granted exclusive use rights to the event

organizers and permitted them to control expressive activity.  In sum, plaintiff has plausibly established that her constitutional right to Free Speech was violated.

ii.      Fourth Amendment Violation

Under the Fourth Amendment, the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV.  However, "[a] warrantless arrest is permissible when an officer has probable cause to believe that a person committed a crime." Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotations omitted).  "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004).

Here, plaintiff alleged that she was standing on Denver Avenue, a public street that had been partially cordoned-off.  Plaintiff further alleged that three days before the event, the Tulsa Mayor's Office issued a public statement that Mayor Bynum did not issue a city permit to the Trump Campaign.  Plaintiff also alleged that Tulsa's municipal ordinance generally requires that private organizations, such as the Trump Campaign, apply for and receive a city permit to block access to public city streets such as Denver Avenue.  Additionally, plaintiff states in her amended complaint that TPD officers were directed by Trump Campaign staff to remove plaintiff from the area.  Plaintiff alleges that TPD officers informed her that she was trespassing; however, plaintiff plausibly established that she was on a public street and TPD was apparently taking orders from a private organization that did not have a permit.  Therefore, plaintiff sufficiently pleads that, at the time of

12

her warrantless seizure, TPD officers did not have probable cause to believe that plaintiff committed a crime.  In other words, it is plausible that it was within the TPD officers' knowledge that plaintiff was on a public city street; that a private organization blocking access to a public city street requires a permit; that the Mayor's Office publicly stated that the Trump Campaign did not have such permit; and it was the Trump Campaign, a private actor without authority to do so, that directed TPD to remove plaintiff, which formed the basis for her warrantless seizure.  It is plausible that TPD officers acted unreasonably when they unquestioningly acted pursuant to untrustworthy information--namely, the Trump Campaign exercising removal authority that it did not possess.  In sum, plaintiff pleads sufficient facts to plausibly establish that a Fourth Amendment violation occurred because she was arrested without a warrant and without probable cause.

iii.    First and Fourteenth Amendment - Free Exercise

"The First Amendment, applicable to the States under the Due Process Clause of the Fourteenth Amendment," McCraw, 973 F.3d at 1065, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ."  U.S. CONST. amend. I.  "The Free Exercise Clause guarantees the right of every person to freely choose [her] own course in the matter of religion[.]"  Janny v. Gamez, 8 F.4th 883, 911 (10th Cir. 2021) (internal quotations omitted).  "A plaintiff states a claim [that] her exercise of religion is burdened if the challenged action is coercive or compulsory in nature."  Id. (internal quotations omitted). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature."  Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1877 (2021).

Plaintiff must plausibly establish the threshold matter of whether there was a violation under the First Amendment's Free Exercise clause.  Plaintiff's amended complaint contains one factual allegation only as to her religious practice. Dkt. # 1, at 5.  Specifically, plaintiff alleges that 1) after she passed through a security screening; 2) after defendant Parscale directed TPD, Secret Service agents, and a Colorado Security employee to remove plaintiff; and 3) after plaintiff was informed that she was not allowed to remain in the cordoned-off portion of Denver Avenue, she then knelt down to pray.  Id.  That is, the decision to remove plaintiff was made before she engaged in any conduct that was religious in nature.  Allowing plaintiff an opportunity to amend would be futile here.  There exists no set of facts that would allow plaintiff to state a plausible claim under § 1983 that any state actors' conduct was because of plaintiff's alleged religious activity.  See Fulton, 141 S. Ct. at 1877.  Therefore, plaintiff's § 1983 claim for Fourteenth Amendment violations as to her rights under the Free Exercise clause (count 1) should be dismissed without leave to amend.

iv.     Fifth and Fourteenth Amendment - Property Deprivation

In her amended complaint, plaintiff alleges that City of Tulsa, by its conduct, violated her Fifth and Fourteenth Amendment "right to not be deprived of her property without due process of law[.]"  Dkt. # 1, at 16.  However, other than this single, conclusory statement, plaintiff makes no allegations in the amended complaint as to what property deprivation she suffered, and the Court will not speculate as to what alleged facts may plausibly establish any such violation.  At the motion to dismiss stage, the burden is on plaintiff to plead sufficient facts to plausibly establish a Due Process violation for deprivation of her property rights.  Therefore, the Court finds that plaintiff's § 1983 claim as to defendant City of Tulsa violating her Due Process rights against deprivation of property should be dismissed.

14

2.      State Action

"The purpose of § 1983 is to deter state actors from using the badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992).

i.      Municipality

In the case of a municipal entity, the "under color of state law" element requires that the constitutional deprivation occurred pursuant to official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). A municipal entity may be held liable for an act it has officially sanctioned, or for the actions of an official with final policymaking authority. Pembaur, 475 U.S. at 480, 482-83; see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127-28 (1988). A plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir.1998) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997)). In order to show that the alleged constitutional deprivation occurred pursuant to an official policy, plaintiff must show that there was a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996) (alterations in Lankford) (internal citations omitted).

Here, plaintiff alleged that the City of Tulsa did not issue the requisite permit to the Trump Campaign for the June 20, 2020 political campaign rally. Plaintiff further alleged that it was the City of Tulsa's responsibility to ensure the Trump Campaign's compliance with municipal ordinances and permitting requirements. Dkt. # 1, at 8. Notwithstanding, plaintiff pleads sufficient facts to

establish that defendant City of Tulsa-- through TPD, an official government body to which City of Tulsa delegates certain policymaking authority, Pembaur. 475 U.S. at 480-84--implemented an "absolute policy of removing and arresting individuals, without question or regard for constitutional rights, at the simple behest of the Trump Campaign." Id. To substantiate this claim, plaintiff alleged that TPD issued a public statement on Facebook that TPD had a policy of "remov[ing] individuals [from the cordoned-off area] only at the direction of [c]ampaign [s]taff." That is, TPD had a policy of removing individuals from a public city street at the direction of a private organization that did not have permission to block access to a public street. It is plausible that such policy was implemented without regard to 1) plaintiff's right to be on a public street, 2) her First Amendment rights, and 3) whether TPD Officers would have probable cause to seize, forcibly remove, and arrest plaintiff. Therefore, it is plausible that City of Tulsa's conduct, pursuant to official policy or sanction (as publicly stated by Mayor Bynum's Office and TPD), directly caused plaintiff's deprivation of her First, Fourteenth, and Fourth Amendment rights.

ii.     TPD Officers Acting Under Color of State Law

Plaintiff alleged that defendants Rhoades and Parker were on-duty TPD officers who forcibly removed plaintiff from a public city street--citing a trespassing violation--and subsequently arrested her. "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" West, 487 U.S. at 49 (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)). "[S]tate employment is generally sufficient to render the defendant a state actor." Id. (internal quotations

omitted).  Therefore, plaintiff sufficiently established that defendants Rhoades and Parker were acting under color of state law.

iii.     Qualified Immunity

Defendants Rhoades and Parker argue that they are entitled to qualified immunity.  Dkt. # 8, at 8.  The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields public officials from facing the burdens of litigation and is an immunity from suit, not simply a defense to a plaintiff's claims.  Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1150 (10th Cir. 2006).  The Tenth Circuit applies a two-step analysis to determine if a defendant is entitled to qualified immunity. Plaintiff must prove that defendants Rhoades and Parker's actions violated a specific constitutional right and, if plaintiff has shown that a constitutional violation occurred, plaintiff must show that the constitutional right was clearly established when the conduct occurred.  See Toevs v. Reid, 685 F.3d 903, 909 (10th Cir. 2012).  A court has discretion to consider the steps in whatever order is appropriate under the circumstances.  Id. at 910 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).  Plaintiff bears the burden to prove that her constitutional rights were violated and that the law giving rise to her claims was clearly established at the time the acts occurred.  See Cox v. Glanz, 800 F.3d 1231, 1246 (10th Cir. 2015); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

"Because they turn on a fact-bound inquiry, qualified immunity defenses are typically resolved at the summary judgment stage rather than on a motion to dismiss."  Thompson v. Ragland, 23 F.4th 1252, 1256 (10th Cir. 2022) (internal quotations omitted).  "Asserting a qualified immunity

defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment." Thomas v. Kaven, 765 F.3d 1183, 1194 (10th Cir. 2014). "On a motion to dismiss, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for [constitutionality]." Thompson, 23 F.4th at 1256 (internal quotations omitted, emphasis and alterations in Thompson).

Pursuant to the Court's findings in Part III.a.1, supra, plaintiff pleads sufficient plausible facts to establish that constitutional violations occurred. The Court must next determine whether plaintiff has alleged facts sufficient to establish that the constitutional rights violated were clearly established when the conduct occurred. "[F]or a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Cortez v. McCauley, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc) (internal quotations omitted).

As the Tenth Circuit emphasized in Thompson, 23 F.4th at 1256, scrutinizing defendants Rhoades and Parker's qualified immunity defense is premature at the motion to dismiss stage. The Court requires additional facts to definitively determine whether defendants are entitled to qualified immunity. However, for purposes of defendant's motion to dismiss, the Court finds that a reasonable officer would have known that it is clearly established by Supreme Court and Tenth Circuit precedent that viewpoint discrimination of protected speech in public fora is "sharply circumscribed" with certain narrow exceptions. Perry, 460 U.S. at 45 ("In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public, and, time out of mind, have

18

been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.  In these quintessential public forums, the government may not prohibit all communicative activity.  For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." (internal citations and quotations omitted)); see also McCullen v. Coakley, 573 U.S. 464, 484-86 (2014); McCraw, 973 F.3d at 1070-71.  As to plaintiff's Fourth Amendment claim, a reasonable officer would have know that it is clearly established that "[t]he law was and is unambiguous: a government official must have probable cause to arrest an individual." Cortez, 478 F.3d at 1117; see also Tennessee v. Garner, 471 U.S. 1, 7 (1985).

In sum, the Court finds that, at this motion to dismiss stage, plaintiff plausibly established that her First and Fourth Amendment rights were violated and that a reasonable officer would have known that those rights were clearly established at the time defendants Rhoades and Parker removed plaintiff from a public street and arrested her, at defendant Trump Campaign and its employee's directive,  because of her expressive attire.  Therefore, plaintiff has sufficiently established, at this stage of the proceedings, that defendants Rhoades and Parker are not entitled to qualified immunity.

iv.   Punitive Damages

Defendants Rhoades, Parker, and City of Tulsa request that the Court dismiss plaintiff's "punitive damage claims" against them.  Dkt. # 8, at 13.  First, punitive damages are a potential remedy, not a claim for relief.  Second, ruling on the issue of punitive damages is premature at this early stage.  The Court notes, however, that as to the issue of punitive damages regarding defendant City of Tulsa, the Supreme Court has held that "a municipality is immune from punitive damages under 42 U.S.C. § 1983[,]" City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

v.      State Claims

Defendants request that the Court dismiss any state claims against Rhoades, Parker, and City of Tulsa.  Dkt. # 8, at 14.  The Court has reviewed the amended complaint (Dkt. # 1) and finds that plaintiff's state claims--false imprisonment (count 3) and fraudulent misrepresentation (count 6)--do not name or make reference to defendants Rhoades, Parker, or City of Tulsa.  Therefore, the Court finds that that part of defendants' motion to dismiss is moot.

In sum, the Court finds that defendants Rhoades, Parker, and City of Tulsa's motion to dismiss (Dkt. # 8) should be granted in part regarding plaintiff's Free Exercise claim (count 1) as to defendants Rhoades and Parker; and as to that portion of plaintiff's Pembaur claim (count 7) against City of Tulsa regarding Due Process violations.  The Court further finds that defendants Rhoades, Parker, and City of Tulsa's motion to dismiss (Dkt. # 8) should be denied in part as to plaintiff's Free Speech claim (count 5) as to defendants Rhoades and Parker, and as to the remainder of plaintiff's Pembaur claim (count 7) against City of Tulsa for First, Fourth, and Fourteenth Amendment violations.  Finally, the Court finds that defendants' motion to dismiss (Dkt. # 8) as to plaintiff's false imprisonment (count 3) and fraudulent misrepresentation (count 6) claims is moot.

b.      *Defendants Parscale and Trump Campaign's Motion to Dismiss (Dkt. # 29)*

Defendants Parscale and Trump Campaign, pursuant to Rule 12(b)(6), move to dismiss plaintiff's claims of false imprisonment (count 3) and fraudulent misrepresentation (count 6) for failure to state a claim.

1.    False Imprisonment

Plaintiff alleges that defendants Parscale and Trump Campaign "are liable for the wrongful arrest and subsequent false imprisonment of [plaintiff] because of their orders . . . to remove her from a public space she had every right to occupy[.]"  Dkt. # 1, at 10-11.

According to the Oklahoma Supreme Court, "[f]alse imprisonment is a common-law wilful tort."  Walters v. J. C. Penney Co., 82 P.3d 578, 583 (Okla. 2003) (citing Restatement (Second) of Torts § 35 (Am. Law Inst. 1965)).   § 35 of the Restatement (Second) of Torts identifies three essential elements to establish an actor's liability to another for false imprisonment: 1) "he intends to confine the other or a third person within boundaries fixed by the actor"; 2) "his act directly or indirectly results in such a confinement of the other"; and 3) "the other is conscious of the confinement or is harmed by it."  Restatement (Second) of Torts § 35.  Accordingly, the Oklahoma Supreme Court has found that "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or *with knowledge that such confinement will, to a substantial certainty, result from it*."  Swafford v. Vermillion, 261 P.2d 187, 191 (Okla. 1953) (internal quotations omitted and emphasis in Swafford).

The allegations in plaintiff's complaint, taken as true for purposes of a motion to dismiss, establish that defendant Parscale, a Trump Campaign employee, directed TPD officers, Secret Service agents, and a Colorado Security employee to remove plaintiff from a cordoned-off portion of Denver Avenue.  However, plaintiff did not plead sufficient facts to establish that defendants Parscale and Trump Campaign intended to confine plaintiff.  See  Restatement (Second) of Torts § 35.  The facts plausibly establish that defendants Parscale and Trump Campaign wanted to remove plaintiff from the cordoned-off area where they were corralling ticket-holders; however, nothing in

21

the facts establishes that they intended to confine plaintiff, or that confinement would, to a substantial certainty, result from defendants Parscale and Trump Campaign's order to remove her. See Swafford, 261 P.2d at 191. Namely, TPD officers approached plaintiff and informed her that she must leave the cordoned-off area. After plaintiff refused to leave, despite being ordered to do so, TPD officers arrested plaintiff and subsequently transported her to the Tulsa County Jail, where she was detained for several hours. Notwithstanding, defendants Parscale and Trump Campaign's objective--to remove plaintiff--would have been accomplished regardless of whether plaintiff had been arrested (resulting in her confinement). Moreover, the facts suggest that, if plaintiff had complied with the TPD officers' order to leave, she would not have been arrested and detained. Consequently, plaintiff cannot plausibly establish that 1) defendants Parscale and Trump Campaign intended to confine plaintiff; and 2) that defendants Parscale and Trump Campaign knew that plaintiff's confinement was substantially certain to occur. Therefore, the Court finds that defendants Parscale and Trump Campaign's motion to dismiss (Dkt. # 29) plaintiff's false imprisonment claim (count 3) should be granted as to those defendants.

2.     Fraudulent Misrepresentation

Plaintiff alleges that defendants Parscale and Trump Campaign are liable for fraudulent misrepresentation because they "misrepresent[ed] and fail[ed] to list the necessary causes that could precipitate the authorization, direction, and/or supervision of a person's removal from the event." Dkt. # 1, at 14. Specifically, plaintiff alleges in the amended complaint that her ticket to the Trump Campaign's rally listed the following items as prohibited:

> aerosols, alcoholic beverages, backpacks, bags, roller bags, suitcases, bags exceeding size restrictions [], balloons, balls, banners, signs, placards, chairs, coolers, drones and other unmanned aircraft systems, explosives of any kind [], glass, thermal and metal containers,

22

> laser lights and laser pointers, mace and/or pepper spray, noisemakers, such as air horns, whistles, drums, bullhorns [], packages, poles, sticks and selfie sticks, spray containers, structures, supports for signs/placards, tripods, umbrellas, appliances [], and any other items that may pose a threat to the security of the event as determined by and at the discretion of the security screeners.

Id. at 4. Plaintiff argues that the above list of prohibited items was a complete list; she was not on notice that her attire could be grounds for removal; and she detrimentally relied on the allegedly exhaustive list of prohibited items written on her ticket to determine that she could wear her "I can't breathe" shirt without issue. Dkt. # 40, at 13.

The Supreme Court of Oklahoma has found that the essential elements of "actionable" fraudulent misrepresentation are as follows: "(1) [t]hat the representations were material"; "(2) that they were false"; "(3) that they were known by the party making them to be false, or that such party made them recklessly[,] without any knowledge of their truth, and as a positive assertion"; "(4) that they were made with the intention that they should be acted upon by the party to whom they were made"; "(5) that such party acted in reliance upon them"; and "(6) that he thereby suffered injury." Davis v. Higgins, 217 P. 193, 195 (Okla. 1923).

Here, plaintiff is incapable of making a prima facie showing of fraudulent misrepresentation. Namely, plaintiff makes a conclusory allegation that the list of prohibited items on her ticket was a complete, exhaustive list. On the contrary, the catch-all clause at the end of the list, "any other items that may pose a threat to the security of the event as determined by and at the discretion of the security screeners," suggests that the list is non-exhaustive and gives the event organizers broad discretion to determine what constitutes a security threat. Therefore, plaintiff is unable to establish the essential elements of a false misrepresentation claim, i.e. that defendants Parscale and Trump Campaign knowingly made false representations on the event ticket. In sum, the Court finds that

23

there exists no set of facts that could plausibly establish that plaintiff detrimentally relied on defendants Parscale and Trump Campaign's false representations on the event ticket, and plaintiff's false misrepresentation claim (count 6) should be dismissed without leave to amend.

**IT IS THEREFORE ORDERED** that plaintiff's § 1983 claims (counts 1, 2, 5) against defendants Secret Service Agent #1 and Secret Service Agent # 2 (Dkt. # 1) are **dismissed without leave to amend**.

**IT IS FURTHER ORDERED** that defendants C.J. Rhoades, M.C. Parker, and City of Tulsa's motion to dismiss (Dkt. # 8) is **granted in part** regarding plaintiff's Free Exercise claim (count 1) as to defendants Rhoades and Parker.  Plaintiff's Free Exercise claim (count 1) is hereby **dismissed without leave to amend**.  Additionally, defendants Rhoades, Parker, and City of Tulsa's motion to dismiss (Dkt. # 8) is **granted in part** as to that portion of plaintiff's <u>Pembaur</u> claim (count 7) against City of Tulsa regarding a Due Process violation.  Further, defendants Rhoades, Parker, and City of Tulsa's motion to dismiss (Dkt. # 8) is **denied in part** regarding plaintiff's Free Speech claim (count 5) as to defendants Rhoades and Parker; and the remainder of plaintiff's <u>Pembaur</u> claim (count 7) against City of Tulsa regarding First, Fourth, and Fourteenth Amendment violations. Finally, defendants Rhoades, Parker, and City of Tulsa's motion to dismiss (Dkt. # 8) is **moot in part** as to plaintiff's false imprisonment (count 3) and fraudulent misrepresentation (count 6) claims.

**IT IS FURTHER ORDERED** that defendants Donald J. Trump for President, Inc. and Brad Parscale's motion to dismiss (Dkt. # 29) is **granted** as to plaintiff's false imprisonment claim (count 3) with respect to those defendants, and as to plaintiff's fraudulent misrepresentation claim (count 6).  Plaintiff's fraudulent misrepresentation claim (count 6) is **dismissed without leave to amend**.

**Defendants Donald J. Trump for President, Inc. and Brad Parscale are terminated as party defendants**.

      **IT IS FURTHER ORDERED** that plaintiff is directed to show cause, **within 14 days**, as to why defendants Secret Service Agent # 1 and Secret Service Agent # 2 have not been served, and to show good cause as to why the Court should not dismiss plaintiff's remaining claims as to those defendants.

      **DATED** this 6th day of April, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE