**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| SHEILA BUCK ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 21-CV-295-CVE-SH |
| vs. ) | |
| ) | |
| CITY OF TULSA, OKLAHOMA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S FIRST MOTION TO COMPEL**

**COMES NOW,** the Plaintiff, Sheila Buck, and pursuant to Rules 37(a)(3)(B) and 34 of the Federal Rules of Civil Procedure, respectfully moves this Court to enter an Order compelling Defendant City of Tulsa, Oklahoma ("Defendant" or "City"), to produce all documents identified on Defendant's privilege log as being withheld based on a purported "Federal Law Enforcement Privilege", as stated herein:

**Introduction**

On January 26, 2023, Defendant produced written responses to Plaintiff's discovery requests, some responsive documents, and a privilege log. Defendant's privilege log identifies 17 documents that the City withheld due to purported privilege. *See* Privilege Log (Ex. 1). Four of the withheld documents were not produced due to a purported "Federal Law Enforcement Privilege." *Id.* Each of the withheld documents appear to be emails between members of the Tulsa Police Department ("TPD") and presumed employees/agents of the Federal Bureau of Investigation ("FBI") or another federal agency concerning the arrest of Plaintiff during the Trump rally on June 20, 2020. *Id.*

On January 30, 2023, counsel for Plaintiff emailed counsel for the City requesting a Rule 37 "meet and confer" regarding the City's discovery responses, including the documents on the

1

privilege log withheld due to the purported Federal Law Enforcement Privilege. *See* January 30 Email (Ex. 2). On February 9, 2023, counsel for the City emailed Plaintiff's counsel stating that, per "the Assistant General Counsel for the FBI," the City is "not authorized to release the FBI Situation Report/email[,]" and that Plaintiff should seek the documents "directly from the FBI using either a subpoena duces tecum or an [sic] FOIA." *See* February 9 Email (Ex. 3)[1].

The City has still not produced the emails, which are highly relevant to Plaintiff's claims and clearly fall within the broad scope of discovery afforded by Federal Rule of Civil Procedure 26(b)(1). This Court should grant Plaintiff's Motion to Compel.

## Summary of Relevant Facts

On June 20, 2020, then-President Trump held a campaign rally in downtown Tulsa. On June 18, 2020, Mayor Bynum issued Executive Order No. 2020-11, which established, in pertinent part, a "curfew boundary" from West Archer Street, West 6th Street, South Houston Avenue, and South Boulder Avenue. *See, e.g.,* Dkt. #99 at 2. From 10:00 p.m. on June 18 to 6:00 a.m. on June 20, and from the conclusion of the Trump rally until 6:00 a.m. on June 21, people were essentially prohibited from protesting in the curfew boundary. *Id.* On June 19, 2020, however, Mayor Bynum issued Executive Order No. 2020-12, which rescinded EO No. 2020-11. *Id.*

On June 19, 2020, the Tulsa Police Department ("TPD") announced, via its official Facebook account, that Mayor Bynum decided to rescind EO No. 2020-11 **after speaking with then-President Trump**. *See* Dkt. #98-3. TPD stated that instead of the Executive Order, "a secure zone has been established by the United States Secret Service in cooperation with the Tulsa Police Department and multiple law enforcement agencies." *Id.* TPD further stated that the

---

[1] Correspondence concerning other litigation not related to Plaintiff's lawsuit has been redacted.

"limited-access secure zone gives all law enforcement the ability to keep the area clear of individuals that are only present to break the law and disrupt the rights of people assembling peacefully." *Id.*

The "limited-access secure zone" has been a major point of contention in this case. Chris Witt, who, in June 2020 served as the lieutenant over TPD's Special Events Unit, testified that the Secret Service instructed law enforcement, including TPD, to remove any protesters in a "sterile area" that spanned from "between Boulder and Cheyenne to Houston and 1st to 6th." Dkt. #98-4) at 51:7 – 53:19. Witt testified that the Secret Service told him that they had the authority to establish a "federally protected or restricted area" without having to obtain a city permit. *Id.* at 56:5 – 58:17. Witt further explained that the "sterile area" was anywhere inside of the no-scale fencing that was put up, and not just the smaller area in which rally attendees would have to pass through metal detectors. *Id.* at 62:18 – 63:15; 65:2-14. Mr. Witt testified that the Secret Service instructed that no one would be allowed in this so-called sterile area that were protesting or wearing clothing that was perceived to be "anti-Trump." *Id.* at 67:23 – 70:3. Similarly, members of the Trump campaign told TPD that anyone wearing "anti-Trump" clothing or protesting within the sterile area would be asked to leave and, if they refused, TPD was to arrest them. *Id.* at 89:9 – 91:7.

During his deposition[2], City of Tulsa Mayor G.T. Bynum testified that it was not appropriate for Ms. Buck to be arrested and removed from the rally because she was wearing a t-shirt that said, "I can't breathe." Bynum Depo. (Ex. 4) at 145:21 – 146:9. Mayor Bynum further testified that, after reviewing the evidence of the case, he was willing to publicly state that "Ms. Buck should not have been arrested where she was arrested and for that reason." *Id.* at 204:24 –

---

[2] On January 13, 2023, Plaintiff noticed the deposition of City of Tulsa Mayor G.T. Bynum. *See* Dkt. #98-8. The City objected and filed a Motion for Protective Order. *See* Dkt. #93. Plaintiff filed her Response to Defendant's Motion for Protective Order on February 2, 2023. *See* Dkt. #98. On February 16, 2023, this Court denied the City's Motion for Protective Order. *See* Dkt. #99. Plaintiff's counsel took Mayor Bynum's deposition on March 2, 2023.

205:4. Finally, Mayor Bynum does not believe that Ms. Buck should be prosecuted for her June 20, 2020 arrest. *Id*. at (Ex. 4) at 206:6-17.

Despite these admissions from Mayor Bynum, Ms. Buck's criminal prosecution persists and the City is, yet again, obstructing counsel for Plaintiff's access to information that is obviously relevant to her claims. Plaintiff's Motion to Compel should be granted.

## Relevant Legal Standards

### A. The Scope of Discovery, Generally

Rule 26(b)(1) permits discovery of "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Whether or not a request for discovery is "proportional to the needs of the case," is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

Even following the 2015 Amendment to Rule 26, "relevance is still to be 'construed ***broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense.***" *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (emphasis added). Several district courts within the Tenth Circuit have endorsed this broad view of relevance following the 2015 Amendment. *See, e.g., Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 717 (D.N.M. 2017) (adopting above-quoted standard for analyzing whether discovery is "relevant" to party's claim or defense); *Rowan v. Sunflower Elec. Power Corp.*, No. 15–CV–9227–JWL–TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (same); *Taylor v. Hy–*

4

*Vee, Inc.*, No. 15–9718–JTM, 2016 WL 7405669, at *5 n. 36 (D. Kan. Dec. 22, 2016) (same); *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *3–4 (N.D. Okla. Jan. 3, 2018) (same). "Courts use 'a broad definition of relevance when determining whether discovery is permissible, because discovery is designed to help define and clarify the issues.'" *Reibert*, No. 17-CV-350-CVE-JFJ, 2018 WL 279348, at *3 (quoting *Barton v. Tomacek*, No. 11–CV–0619–CVE–TLW, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012)). "A request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004).

Where, as here, "the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan. 2003) (footnote citation omitted).

When a court is deciding whether to grant a motion to compel, "proper focus is on the 'opposition brief' rather than the motion itself, as the nonmoving party bears the burden of demonstrating why the discovery requests should be denied. *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *4 (D. Kan. Mar. 30, 2005), *citing Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165, 168 (D.Conn.2005).; *accord PAS Communications, Inc. v. Sprint Corp.*, 139 F.Supp.2d 1149, 1159 (D.Kan.2001) (where discovery sought appears relevant, party resisting discovery bears the burden of establishing lack of relevance). "In most cases, the moving party need only file its motion to compel and draw the court's attention to the relief the party seeks.

At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence." *Id.*

### B. "Law Enforcement Privilege"

"The law enforcement privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of…investigatory files." *U.S. v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (cleaned up). ***"To assert the law enforcement evidentiary privilege, the responsible official in the department must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege."*** *Id.* (internal citation omitted) (emphasis added). "The party claiming the privilege has the burden of establishing these elements." *Carbajal v. Warner*, 2015 WL 4055418, at *1 (D. Colo. 2015) (cleaned up).

"The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C.,1998). "The privilege serves to preserve the integrity of law enforcement techniques and confidential sources, protects witnesses and law enforcement personnel, safeguards the privacy of individuals under investigation, and prevents interference with investigations." *Id.* at 176-77.

The law enforcement privilege covers only "records or information compiled for law enforcement purposes. To qualify for this privilege from disclosure, the information must satisfy two conditions: its source must be a government agency, and the agency must demonstrate how a disclosure would cause one of the harms specified in [5 U.S.C.] § 552(b)(7)." *Estate of Lillis by and through Lillis v. Board of County Commissioners of Arapahoe County*, 2019 WL 3416268, at *2 (D. Colo. 2019) (cleaned up). The harms specified in 5 U.S.C. § 552(b)(7) include:

> interference with enforcement proceedings, deprivation of a right to a fair trial or an impartial adjudication, unwarranted invasions of personal privacy, disclosure of the identity of a confidential source or information furnished by a confidential source, disclosure of techniques and procedures for law enforcement investigations or prosecutions, disclosure of guidelines for law enforcement investigations or prosecutions or endangering the life or physical safety of any individual.

*Id. See also,* 5 U.S.C. § 552(b)(7). Defendant has failed to identify how any of these harms apply to the emails Plaintiff seeks. Indeed, none of them do. Defendant should be compelled to produce the four emails in question.

### **Argument and Authorities**

Each of the four emails discussed below are between TPD officers and another individual presumed to be an employee of a federal agency. The City has made no objection to their production on any grounds other than the "Federal Law Enforcement Privilege." Neither the City, nor any other governmental agency, has made any showing as to how or why the information contained in the emails falls under the protection of the privilege. No governmental agency has demonstrated how disclosure of any of the emails "would cause one of the harms specified in 5 U.S.C. § 552(b)(7)." And it's difficult to see how any governmental agency could possibly make such a demonstration. Any investigation into Ms. Buck's conduct has long concluded. There has never been any indication that the FBI or any other federal agency ever investigated Ms. Buck's conduct. Certainly, the disclosure of the emails would not endanger the "life or physical safety of any individual." The emails firmly fall within the scope of Rule 26(b)(1), are not protected by any law enforcement privilege, and should be produced to Plaintiff.

**A. Email from Bradley Shins to Paul Fields**

The first email, dated June 20, 2020, that the City refuses to produce – based on a purported "Federal Law Enforcement Privilege" – is between Bradley Shins and Paul Fields and is named "FBI Situational Report." *See* Privilege Log (Ex. 1) at 2. Paul Fields is a Major with TPD

who was present at more than one security briefing at which security personnel were informed about areas in which attire "inconsistent with Trump's messaging" was prohibited. This email falls squarely within the scope of discovery provided by Rule 26(b)(1) and Defendant has not – and cannot – make any showing that any law enforcement privilege applies.

### B. Email from Yesenia Vizcarrondo to Paul Fields

The second email the City refuses to produce, also dated June 20, 2020, is between Yesenia Vizcarrondo and Major Fields, and is titled "Fwd: Arrest at Protest." *See* Privilege Log (Ex. 1) at 3. The same reasoning from the previous Major Fields email applies here. The City should produce the two emails to Major Fields.

### C. Email from Micahel Helton to Shannon Cozzoni

The next email Plaintiff seeks is dated June 23, 2020, is from TPD Sgt. Michael Helton to Shannon Cozzoni, and is titled "Last Arrest." *See* Privilege Log (Ex. 1) at 3. While not much more is known about the contents of this email, it certainly could be relevant to Plaintiff's claims or lead to the discovery of relevant information. Further, Defendant has not argued that the email is irrelevant or otherwise not discoverable, once again only asserting federal law enforcement privilege. *Id.* As with the previous emails, neither the City nor any federal agency has made *any* showing that disclosure of the email "would cause one of the harms specified in 5 U.S.C. § 552(b)(7)." The email between Sgt. Helton and Shannon Cozzoni should be produced.

### D. Email from Dana West to Pablo Zuniga

The final email Plaintiff seeks is from Dana West to TPD Detective Pablo Zuniga. *See* Privilege Log (Ex. 1) at 3. The email, dated June 20, 2020, is titled "Fwd. Arrest at 4th and Cheyenne." *Id.* This email not only is dated the day Plaintiff was arrested, but its title refers to the intersection at which Plaintiff was arrested. *See*, e.g., Bynum Depo. (Ex. 4) at 140:14 – 142:17. Its relevance is obvious. And, again, no government agency has made a showing, nor could it, that

disclosure of this email would cause any harm identified by 5 U.S.C. § 552(b)(7). This Court should compel Defendant to produce the email from Dana West to Detective Zuniga.

WHEREFORE, premises considered, Plaintiff respectfully requests that the Court grant Plaintiff's First Motion to Compel.

Respectfully submitted,

/s/Bryon D. Helm
Daniel E. Smolen, OBA#19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
SMOLEN & ROYTMAN,
701 S. Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of March 2023, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

/s/Bryon D. Helm